This is an appeal from an order of Domestic Relations Judge Timothy Flanagan adopting the decision of Magistrate Corey W. Frost to deny appellant Frederick D. Kubiak's Motion for Nunc Pro Tunc Entry to alter pension provisions of his 1985 separation agreement. He claims that the United States Civil Service Retirement Service Office of Personnel Management used an incorrect formula in distributing a portion of his pension benefits and the percentage of her survivorship annuity to his former spouse, appellee Christine L. Kubiak, n.k.a. Christine L. DeLuca. Because the judge did not have the authority to grant the requested relief, we affirm.
The record reveals the following. The parties divorced on July 17, 1985. The divorce decree incorporated a separation agreement which, in pertinent part, contained the following distribution of Kubiak's federal pension:
 Husband is presently a fully vested participant in the United States Civil Service Retirement System [(CSRS)]. The parties agree that the Office of Personnel Management or any other entity administering the United States Civil Service Retirement System is instructed to compute the accrued benefit of Husband, as of the date of April 30, 1984 and including sick leave of 300 hours as of said date, but specifically excluding military service, and express said benefit in the form of a 100% joint and survivor annuity, Wife receiving a survivor annuity, and to compute fifty percent (50%) of said annuity and deduct therefrom the sum of Two Hundred Eighteen Dollars and Thirty-three cents ($218.33) and pay said sum to Wife, commencing at the retirement date of Husband.
Between 1984 and 1995, Kubiak's yearly salary rose from $27,500 to $46,568. In March 1995, he retired after over thirty-seven years of service with NASA and applied to the Office of Personnel Management (OPM) for his CSRS pension benefits. In July 1995, after the OPM determined that, pursuant to part 838 of title 5 of the Code of Federal Regulations, provisions of the separation agreement were acceptable for processing, Ms. DeLuca began receiving benefits.
By letter dated September 28, 1995, Anthony A. Hill, a Paralegal Specialist in the Court Order Benefits Section of the OPM, sent a letter to Ms. DeLuca indicating that Kubiak had requested an explanation of how the OPM determined the apportionment of her benefits and in which he explained:
 After a careful review of the court order, we find that your monthly award should be based on 32.88% of your former spouse[']s monthly annuity ($780.57) less $218.33. Your annuity therefore should have been $562.24 per month.
 As of October 1, 1995, you have been paid $6,134.88. [Y]ou should have been paid $3,373.44. You have therefore been overpaid by $2,761.36. The overpayment will be collected from your monthly annuity in 36 installments of $76.54 and 73 installments of sixteen cents. Your monthly annuity, effective October 1, 1995 will be $562.24.
In a letter dated October 20, 1995, Hill explained to Kubiak's lawyer the formula used by the OPM in determining Ms. DeLuca's benefit:
 The formula used by the Office of Personnel Management in the computation of Mr. Kubiak[']s former spouse annuity is as follows. The order states that we are to use one half of a fraction. The numerator of that fraction is the beginning date of employment with the Federal Government (Dec[.] 1, 1957), through April 30, 1984. As directed by the order, OPM subtracted the military service (1 year and 10 months) and added 300 hours of sick leave to this service period. This equates to 296 months for the numerator.
 The denominator is the total creditable service performed by Mr. Kubiak (37 years and 6 months)[,] 450 months. The percent awarded the former spouse is 32.88%. Mr. Kubiak[']s former spouse will receive $780.57 less $218.33 which comes to $562.24 per month.
 This is the monthly withhold currently being deducted from Mr. Kubiak[']s annuity.
The letter further explained that Ms. DeLuca had been overpaid and that the OPM was withholding funds in the amount of $76.70 for thirty-five upcoming installments.
On June 25, 1996, Mr. Kubiak filed his Motion for Nunc Pro Tunc Entry. In his brief in support, he argued that the OPM had utilized a method of calculation which is at variance with the parties' Agreement and that the OPM had not informed him whether or how he would recover the funds overpaid to Ms. DeLuca. He then requested that the judge clarify the terms of the separation agreement.
In response, Ms. DeLuca filed her August 27, 1996 Motion for Clarificationand Response to Plaintiff's Motion for Nunc Pro Tunc Entry. In her affidavit accompanying her motion, she averred that the formula used by the OPM was correct but that the formula set forth in the parties' separation agreement, however, is wrong relative to the offset provided to Plaintiff (Kubiak) for affiant's (her) social security benefits. She requested that the formula set forth in the separation agreement be adjusted accordingly.
At a December 16, 1997 hearing before the magistrate, both parties filed their trial briefs, response briefs, and copies of closing arguments. Through the February 24, 1999 decision, the magistrate provided a detailed explanation of the parties' respective positions.
Kubiak asserted that the OPM should have calculated Ms. DeLuca's benefits as though his number of service credits and average salary were frozen as of April 30, 1984. He claimed that the calculation used by the OPM effectively modified the separation agreement and, as a result, he was being shortchanged by approximately $350 per month. In addition, he was also concerned because the CSRS plan allowed Ms. DeLuca to receive a survivorship benefit equal to 55% of the amount of his basic retirement and he believed she was entitled to substantially less than 50% although he failed to explain his methodology or offer an explanation regarding an alternative percentage permissible under the CSRS plan.
Ms. DeLuca, on the other hand, contended that the parties agreed that the OPM would divide the retirement funds in accordance with the separation agreement and federal law. She contended that any clarification of the terms of the agreement would be an impermissible post-judgment modification of the property settlement. In the alternative, she suggested that if the judge did modify the judgment, then he must prorate all post-retirement cost-of-living adjustments. According to her calculations, she should be entitled to receive between $653 to $690 per month before the offset of Social Security benefits. She also claimed that if the separation agreement were changed, the stipulated $218.33 deduction, which represented an estimated social security offset, was incorrect and should have reflected a 1984 benefit of only $92.
The magistrate noted that, in computing the allocation of the retirement benefits, the OPM deducted the cost of maintaining the survivorship benefit from the gross amount of the basic retirement annuity and then applied the coverture fraction to arrive at proportionate net benefits. He also noted that the parties' separation agreement not only failed to address the impact of post-retirement cost-of-living adjustments (COLA), it did not specify how Ms. DeLuca's survivorship benefits would be funded. Moreover, between 1984 and 1995, the cost to maintain the survivorship annuity increased dramatically (from $71 to $239 per month) and the payable survivorship benefit changed from a 50% to 55% factor. In addition, neither party appreciated the complexity of the division of the CSRS benefits and, rather than allocating a value to Kubiak's retirement benefits as of 1984, they chose to defer valuation until his date of retirement:
 Had a value been attached in 1984 with a specific dollar amount declared payable to Ms.
 DeLuca, each party would have had actual knowledge of the frozen amount of Ms. DeLuca's benefit and could plan their futures accordingly. As an alternative, if the parties did not wish to attach a formal contemporary valuation to the CSRS benefits in 1984, they could have equitably agreed that, upon Mr. Kubiak's retirement, the CSRS benefits would be apportioned as a function of the marital coverture fraction. In this manner, pre- and post-retirement growth could have ben proportionately distributed to each party.
The magistrate further noted that [t]he parties['] decision to postpone valuation of their respective interests until after Mr. Kubiak's retirement invited interim change [in OPM regulations]. To this extent, their decision to rely upon the OPM's interpretation of the settlement agreement in light of a lack of detailed instructions indicated their consent to the exercise of a certain amount of discretion by the plan administrator.
In his conclusion, the magistrate illustrated the difficulties, as the settlement agreement was written, in placing valuations upon the benefits. Noting that neither party argued that the illustrated valuations were appropriate, he concluded that the settlement agreement cannot be clarified as either party argued.
 Even though the manner in which OBM [sic] has computed the parties' respective retirement benefits may not reflect the parties' precise intentions as set forth in their Separation Agreement, the distribution is nevertheless equitable to both Mr. Kubiak and Ms. DeLuca. In fact, had the agreement been negotiated in 1995 rather than 1984, the parties might well have recognized OBM's [sic] methodology as the most popular way to divide an important marital asset. OBM's [sic] computation will allow Ms. DeLuca to share proportionately in all post-retirement cost of living adjustments and will apportion the cost of financing Ms. DeLuca's survivorship benefit between the parties. Mr. Kubiak and Ms.
 DeLuca each expressly stated that his or her intent in 1984 was to divide all marital property equally. The evidence presented in his proceeding indicates to this observer that their goal has been achieved.
He then denied both motions and allocated costs against both parties equally.
Kubiak filed his objections to the decision, arguing that the OPM's application of a particular regulation to their settlement agreement was erroneous and that another section applied. Ms. DeLuca responded that their settlement agreement cannot be modified and that the OPM applied the correct regulation to distribute her share of the retirement benefit.
On August 11, 1999, the judge overruled the parties' objections and adopted the magistrate's decision.
Kubiak raises two assignments of error, which we will address together:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT APPROVED THE APPLICATION OF A COVERTURE FRACTION METHOD TO DETERMINE THE PERCENTAGE OF APPELLEE'S PORTION OF APPELLANT'S PENSIONS BENEFIT.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT APPROVED A 55% SURVIVORSHIP ANNUITY FOR APPELLEE OF THE TOTAL BENEFIT DUE APPELLANT.
Kubiak argues that the allocation formula utilized by the OPM and adopted by the judge does not reflect the intent of the parties because it essentially gives Ms. DeLuca the additional benefit for the time he worked between 1984 and 1995. He claims that the parties agreed to a fixed benefit method that would exclude the additional benefit of his continued employment after 1984. In addition, he argues that the survivorship annuity of 55%, adopted by the OPM, provides a windfall to Ms. DeLuca upon his death because the parties had agreed to only 50%.
Ms. DeLuca counters that if Kubiak's contention is accepted, he will receive all COLA's attributed to the pension and effectively receive interest on her money. The problem here, she argues, is simply a dispute whether the OPM is correctly interpreting the terms of the settlement agreement and that Kubiak did not request the fixed benefit method before. Finally, she argues that administrative regulations apply because the settlement agreement provides for a survivor annuity but does not provide a percentage for the annuity.
A division or disbursement of property or a distributive award * * * is not subject to future modification by the court[,] R.C. 3105.171(I), unless the parties' separation agreement specifically provides that the judge retain jurisdiction to modify it in the future, In re Whitman (1998), 81 Ohio St.3d 239, 690 N.E.2d 535. Here, the parties did not provide for the judge's continued jurisdiction but expressly agreed that the separation agreement shall not be altered, changed or modified, except that it be done in writing and signed by both parties.
Kubiak has not argued that the paragraph is ambiguous on its face; rather, he argued in his Motion for Nunc Pro Tunc Entry that the OPM had utilized a method of calculation which is at variance with the parties' Agreement and that the settlement agreement warranted a different benefits calculation. This, he claimed, required a clarification of the settlement agreement as adopted by the order of divorce so the OPM would get it right. In a nutshell, he had asked the judge to direct the OPM in applying its regulations to the settlement agreement and order Ms. DeLuca to return to him the money to which she was not otherwise entitled.
While courts possess inherent authority to correct errors in judgment entries so that the record speaks the truth, nunc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide. State ex rel. Litty v. Leskovyansky(1996), 77 Ohio St.3d 97,100, 671 N.E.2d 236, citing State ex rel. Fogle v. Steiner (1995),74 Ohio St.3d 158, 163-164, 656 N.E.2d 1288, 1294. Because Kubiak contends that the document did not reflect the alleged intent of the parties or, for that matter, the judge in his approval of the agreed order, a nunc pro tunc order clarifying the agreed order is not the appropriate remedy. In any event, the error of which Kubiak complains is the OPM's interpretation of the agreement. Because the parties specifically agreed that the OPM would compute the retirement benefit, nothing remains to be clarified by the judge. Kubiak is left to his administrative remedies.
The OPM is an independent establishment in the executive branch.5 U.S.C. § 1101. Congress has specifically granted the OPM the power and authority to perform, or cause to be performed, such acts and prescribe such regulations as are necessary and proper to carry out this subchapter [relating to civil service retirement]. 5 U.S.C. § 8347(a). To that end, the OPM has adopted guidelines for interpreting state court orders dividing civil service retirement benefits. 5 C.F.R., Pt. 838, Subpt. J, App. A. The record shows that the OPM applied the following guideline when interpreting the settlement agreement:
Annuity as of date before retirement.
 Orders that award a portion of an employee's annuity as of a specified date before the employee's retirement will be interpreted as awarding a portion of the annuity equal to the monthly annuity rate at the time of retirement times a fraction, the numerator of which is the number of months of credible service or service worked as of the date specified and the denominator of which is the number of months of credible service' or service worked used in the retirement computation. [Id. at part I.D.]
Federal statutes also set the percentage rate of a surviving spouse's (or surviving former spouse's) annuity where a percentage has not been elected in accordance with statute and accompanying regulations.5 U.S.C. § 8339(j)(3), 8341(h)(1). If a decision of the OPM affects the rights of an individual relating to retirement benefits, that individual may appeal the decision to the Merit Systems Protection Board [MSPB] under its proscribed procedures. 5 U.S.C. § 8347(d)(1);5 U.S.C. § 1204(a); 5 C.F.R. § 1201.3(a)(6); 5 C.F.R. § 1201.21
et seq. If the individual affected by a retirement benefits decision seeks additional review of a final order of the MSPB, jurisdiction lies in the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703;28 U.S.C. § 1295(a)(9).
Kubiak's request for relief does not necessitate state judicial intervention. He did not assert that the portion of the settlement agreement dividing the CSRS pension was ambiguous standing alone, only that the OPM was not administering the benefits in accordance with the intent of the parties. He claims on appeal that the judge erred in approving both the OPM's application of the coverture fraction method to determine Ms. DeLuca's percentage of his pension benefit and the OPM's decision to provide her with 55% survivorship annuity. It was not within the province of the judge to approve or disapprove the OPM's application of its regulations to the settlement order. Such authority lies in the MSPB and, ultimately, the United States Court of Appeals for the Federal Circuit.
The courts of Ohio lack the power to direct the OPM in the application of its regulations to a settlement agreement which divides a civil service retirement benefit and, therefore, Kubiak's request for relief requires administrative review in accordance with Title V of the United States Code. Because the judge did not have the power to grant the relief requested, the Motion for Nunc Pro Tunc Entry was properly denied.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J. CONCUR; JAMES M. PORTER, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.